Minute Order Form (06/97)

1st status

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4279 | **DATE** | December 20, 2000 |
| **CASE TITLE** | Rose et al -v- MONY Life Ins Co et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Raymond and Scott Veselik's motion (Doc 50-1) to dismiss is denied. Attorney Defendants' motion for leave to file a 20-page memorandum in support of their motion to dismiss, is granted. Answer to said motion, limited to 20 pages, is due January 31, 2001. Reply, limited to 10 pages, is due February 14, 2001. Ruling set for February 28, 2001 at 9:30 a.m.

(11) ■ For further detail see order attached to the original minute order

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | DEC 21 2000 | | |
| | Notified counsel by telephone. | | date docketed | 57 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | DEC 20 PM 2:30 | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANN ROSE, MICHAEL SCOTT, WENDIE ROSE SCOTT and MICHAEL ROSE, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | 99 C 4279 |
| MONY LIFE INSURANCE COMPANY, MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, MONY LIFE INSURANCE COMPANY OF AMERICA, RAYMOND C. VESELIK and SCOTT VESELIK, RICHARD BARTELT and WILDMAN HARROLD ALLEN & DIXON, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

### INTRODUCTION

Before the Court is Raymond and Scott Veselik's Motion to Dismiss Plaintiffs' Second Amended Complaint. For the following reasons, we deny the motion.

### BACKGROUND

For purposes of this motion to dismiss, we accept Plaintiffs' allegations as true, as we are obligated to do. This case arises from the relationship among Plaintiffs Ann

Rose, Michael Scott, Wendie Rose Scott and Michael Rose (collectively "Plaintiffs") and their insurance agent Raymond C. Veselik ("Veselik"). Following the death of Ann Rose's husband in 1974, Veselik became a close friend and personal financial adviser to Ann Rose. In the ensuing years, Ann Rose became dependent on Veselik for assistance with her personal assets and estate. As her health problems intensified, so too did her dependence on Veselik.

Ann Rose alleges that from 1976 to the present Raymond Veselik devised and engaged in a scheme to obtain for himself and his principals, Mutual Life Insurance Company of New York and MONY Life Insurance Company (collectively "MONY"), a continuing stream of income from Plaintiffs in the form of commissions, premiums, interest and other fees and charges. Veselik created this "Churning Scheme" by inducing Plaintiffs to purchase and maintain additional insurance policies and annuities. Plaintiffs included in their Second Amended Complaint a long list of specific examples of alleged misrepresentations made by Raymond and Scott Veselik (collectively "the Veselik Defendants") between 1982 and 1996. Plaintiffs charge that the Veselik Defendants knew the misrepresentations were false and made them for the purpose of executing and concealing the Churning Scheme.

In reliance on these misrepresentations, Plaintiffs purchased more than 23 MONY life insurance policies and annuities. Those purchases produced large

commissions to the Veselik Defendants and hundreds of thousands of dollars in premiums, deposits, interest payments and other charges to MONY. Despite numerous requests, Plaintiffs did not receive copies of many of their policies and annuities until 1997.

In order to continue and conceal the Churning Scheme and other misrepresentations, the Veselik Defendants allegedly arranged for unauthorized intra-policy and inter-policy loans against Plaintiffs' policies in order to pay premiums on the new and existing policies. The Veselik Defendants obtained these loans by using blank or incomplete authorization forms which they forwarded to Plaintiffs for signature without adequate explanation or with false and misleading explanations. Unbeknownst to Plaintiffs, these unauthorized loans caused lapses and/or depletion of the available cash values and death benefits under their policies.

In the late 1980s and early 1990s, Ann Rose asked Raymond Veselik about discrepancies between representations from Veselik and information provided by MONY. Veselik assured Ann that her policies were in order and that any confusion had been generated by errors made by MONY's home office. Veselik suggested that Ann retain Richard Bartelt ("Bartelt") to resolve any concerns regarding the MONY policies and annuities. Bartelt agreed to represent Plaintiffs even though he had represented Veselik in connection with claims brought against him by other MONY

policyholders involving misconduct similar to what Plaintiffs allege in the instant matter. At no time did Bartelt advise Plaintiffs that other MONY policyholders had lodged identical complaints against Veselik, nor did he apprise Plaintiffs of his prior representation of Veselik in connection with those matters. Instead, Bartelt confirmed the substance and accuracy of Veselik's representations.

In 1990, Ann Rose questioned Veselik about the premiums of one particular policy. To placate Rose and further the Churning Scheme, Bartelt allegedly drafted a letter agreement between Veselik and Rose in order to resolve any conflict between the terms of the policy and Veselik's representations, notwithstanding that Bartelt allegedly knew that the letter agreement was ineffectual and a nullity. Thereafter, in reliance on the letter agreement, Rose maintained her current policies with MONY.

Bartelt continued to represent Ann Rose despite his knowledge of Veselik's wrongdoing. In 1996, Plaintiffs asked Bartlet and his firm to investigate any claims they might have against Veselik and MONY. Bartelt never disclosed to Plaintiffs that Veselik was no longer an agent of MONY and that he had negotiated the terms of Veselik's resignation from MONY. Nor did Bartelt disclose that he and his law firm were representing Veselik in a suit brought by MONY alleging breach of fiduciary duties, breach of contract and fraud in the procurement and servicing of life insurance policies and annuities of numerous MONY policyholders. Moreover, Bartelt failed to

disclose that Veselik's resignation from MONY was precipitated by Veselik's alleged fraudulent scheme.

As a result of the misrepresentations, the Churning Scheme and other conduct, Plaintiffs have incurred damages in the form of loss of premiums, interest, cash values, death benefits and other charges both for lapsed and existing policies. Furthermore, Plaintiffs have had to pay premiums and loan payments in excess of those represented by Veselik in order to prevent the policies from lapsing. Also, Plaintiffs have suffered tax penalties on withdrawals from their annuities.

Plaintiffs filed a Complaint in this court on June 28, 1999. They filed an Amended Complaint on March 1, 2000, and a Second Amended Complaint on October 5, 2000. The Second Amended Complaint names as defendants MONY Life Insurance Co., Mutual Life Insurance Co. of New York, MONY Life Insurance Co. of America, Raymond. C. Veselik and Scott Veselik. The Second Amended Complaint contains fifteen counts, five of which implicate one or both of the Veselik Defendants. Count II raises a claim against Raymond Veselik under § 1962(c) of the RICO statute; Count V alleges fraud against both Veseliks; Count VI asserts a violation of the Illinois Consumer Fraud Act against both Veseliks; Count VIII claims breach of fiduciary duty by the elder Veselik; and Count XV alleges conspiracy to defraud against the elder

Veselik. Defendants Raymond and Scott Veselik now move to dismiss the counts against them.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests whether the plaintiff has properly stated a claim for which relief may be granted. See Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir. 1995). The court must accept as true all of the plaintiff's well-pleaded factual allegations as well as all reasonable inferences. See Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977). However, the court need "not strain to find inferences favorable to the plaintiffs" which are not apparent on the face of the complaint. Id. The court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)).

## DISCUSSION

The Veselik Defendants raise two grounds in their motion to dismiss. First, they contend that Plaintiff's claims are time-barred. Second, they assert that Ann Rose signed an agreement releasing any and all claims against Raymond Veselik. We treat each ground in turn.

1. Statute of Limitations

The Veselik Defendants contend that Plaintiffs' claims are time-barred. Plaintiffs' claims accrued many years ago, according to Defendants, and the statute of limitations ran before Plaintiffs filed their Complaint.

A four-year statute of limitations applies to all actions brought under RICO. See Agency Holding Corp. v. Mattey-Duff Assocs., Inc., 483 U.S. 143, 150-51 (1987). The statute begins to run when a plaintiff knew or should have known of his or her injuries. See McCool v. Strata Oil Co., 972 F.2d 1452, 1464 (7th Cir. 1992). Because the inquiry essentially boils down to timing, it is ordinarily a question of fact. See Cathedral of Joy Baptist Church v. Village of Hazel Crest, 22 F.3d 713, 719 (7th Cir. 1994). Only if the relevant facts are undisputed and only one conclusion may be drawn from them does the issue become ripe for decision at the motion to dismiss stage. See id.

Plaintiffs filed their Complaint on June 28, 1999.[1] The Veselik Defendants argue that Plaintiffs knew or should have known of the alleged racketeering activity more than four years prior to the date of filing. In support of this argument, Defendants contend that Plaintiffs only pled with particularity alleged misrepresentations occurring

---

[1] In their supporting memorandum, Defendants repeatedly misstated the date Plaintiff filed her original Complaint as June 28, 2000.

until July 1996, yet they knew or should have known of their potential claims as early as 1990 when they retained attorney Bartelt to investigate their policies. Defendants also assert that Plaintiffs had an affirmative duty to read their policies. Had they done so, they would have recognized the alleged contradictions between the policies and Veselik's representations. This realization should have triggered in Plaintiffs a duty of reasonable inquiry, according to Defendants, that would have made them aware of their injuries.

Plaintiffs counter that they could not have detected the fraudulent schemes despite their retention of Bartelt because Bartelt was conspiring with Veselik. The allegations contained in their Second Amended Complaint support this contention. According to the Second Amended Complaint, Veselik recommended that Plaintiffs retain Bartelt, and Bartelt worked in collusion with the Veselik Defendants to promote the alleged schemes and conceal Plaintiffs' injuries from them. Bartelt's relationship with Raymond Veselik undermines Defendants' proposition that the Bartelt's retention by Plaintiffs marked the beginning of their awareness of the alleged scheme. Thus the fact that Plaintiffs consulted Bartelt does not demonstrate as a matter of law that they knew or should have known of their potential claims.

Moreover, Plaintiffs pled with particularity as to numerous instances of fraud and misrepresentation that lasted as late as 1996. This long list of alleged

misrepresentations suggests an ongoing impenetrable series of misrepresentations which may well have eluded Plaintiffs for quite some time. Furthermore, because they did not receive copies of their policies until as late as 1997 despite repeated requests, Plaintiffs remained unable to discover for themselves Veselik's alleged misrepresentations. This delay occurred at least in part because of Defendants' attempts to avoid detection, according to Plaintiffs. Accepting these well-pleaded allegations as true, we cannot determine at this stage that Plaintiffs knew or should have known of their alleged injuries more than four years before they filed their lawsuit.

Defendants have also raised counts of breach of fiduciary duty, conspiracy to defraud, and common law fraud. Illinois imposes a two-year statute of limitations on "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance...." 735 ILCS 5/13-214.4.

Defendants argue that the two-year statute of limitations bars these three claims for three reasons. First, Plaintiffs should have had notice of their potential claims upon reviewing their policies. Second, Plaintiffs demonstrated they had notice when they retained counsel. Third, Plaintiffs' execution of a "tolling agreement" with MONY on May 28, 1998, illustrates they had "reasonable inquiry notice" of their claims.

We have already rejected the first two arguments, and our reasoning applies with equal force when a two-year statute of limitations is at issue. As for the third reason, even if Plaintiffs and MONY entered a "tolling agreement," they executed the agreement on May 28, 1998. Plaintiffs filed their complaint just over a year later on June 28, 1999. Thus, even if the tolling agreement demonstrated that Plaintiffs had reasonable inquiry notice of their potential claims, they filed their Complaint well within the permissible two-year period.[2]

With respect to Plaintiff's statutory fraud claim, the Illinois Consumer Fraud Act has a three-year statute of limitations, see 815 ILCS 505/10a, and Illinois law imposes a two-year statute of limitations on insurance claims generally, see 735 ILCS 5/13-214.4. Regardless of which statute of limitations applies, Plaintiffs' claim survives because Plaintiffs have alleged misrepresentations extending at least within two years of the filing of their complaint on June 28, 1999. Accepting these allegations as true, which we must, we can discern a set of facts under which relief could be granted.

---

[2] In their reply brief, Defendants appear to raise a fourth argument by claiming summarily that the "conspiracy/collusion count is not plead [sic] with any specificity whatsoever and must be stricken." (Pl. Repl. Brf. at 4.) Defendants do not elaborate upon this claim, however. After our independent review, we conclude that the count is pled with the requisite particularity. The Second Amended Complaint states adequately the "the who, what, when, where, and how: the first paragraph of any news story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990); see, e.g., Pl. Compl. ¶¶ 15(m), 26, 27, 28, 29, 32, 33, 34, 89(a)-(i), 94(a)-(k), 100(a)-(i).

Ledford v. Sullivan, 105 F.3d at 356. Accordingly, Plaintiffs' statutory fraud claim survives this motion to dismiss.

2. Release

Defendants argue in the alternative that Ann Rose signed a written release of her claims against Veselik. In support of this argument, Defendants point to a purported letter agreement (the "Letter Agreement") between Ann Rose and Raymond Veselik. Although neither party appended a copy of the Letter Agreement to its papers, Plaintiffs referenced the Letter Agreement in their Complaint. In paragraph 29, Plaintiffs allege that Bartelt drafted the Letter Agreement and presented it to Ann Rose as a "resolution of any conflict between the terms of the policy and Raymond Veselik's representations. . . ." In reliance on the Letter Agreement, Rose allegedly maintained her current policies with MONY and continued to purchase additional policies from Veselik.

Defendants offer the summary conclusion that the Letter Agreement constituted a release. When we construe the allegations in favor of Plaintiffs, however, we do not reach the same conclusion. The Second Amended Complaint says that the Letter Agreement resolved any conflict between the policy terms and Veselik's representation, but it does not say in whose favor the conflicts were resolved. The Second Amended Complaint does not elaborate upon the Letter Agreement except to say that Ann Rose continued to rely on Veselik following its execution. Rose's continued reliance does not necessarily comport with the notion that she had just

- 11 -

released Veselik from all potential claims. To the contrary, her continued reliance could have resulted from Veselik's assurances that his representations, and not the policy, were accurate. That Ann Rose may have felt appeased by Veselik's representations and signed an agreement to that effect is not tantamount to a release of all potential claims against Veselik. Thus at this stage the allegations do not support Defendant's conclusion that the Letter Agreement constituted a release.

## CONCLUSION

For the foregoing reasons, we deny the Veselik Defendants' motion to dismiss.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: December 20, 2000