# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4279 | **DATE** | 2/28/2001 |
| **CASE TITLE** | Rose et al vs. MONY Life Ins Co et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 56-1) to dismiss is granted with respect to Count XII (Breach of Fiduciary Duty), Count XIII (Constructive Fraud), and Count XV (Conspiracy to Defraud). Those claims are hereby dismissed from the Second Amended Complaint. Defendants' motion to dismiss is denied with respect to Count XI (Attorney Malpractice) and Count XIV (Fraud). Defendants to answer all pending Counts by March 20, 2001. All discovery issues including setting schedules and deadlines, is referred to Magistrate Judge Bobrick pursuant to order dated March 22, 2000.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 0 2 2001 | |
| | Notified counsel by telephone. | date docketed | 61 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | MAR 01 2001 | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANN ROSE, MICHAEL SCOTT, )
WENDIE ROSE SCOTT and )
MICHAEL ROSE, )
 )
        Plaintiffs, )
 )
vs. ) 99 C 4279
 )
MONY LIFE INSURANCE COMPANY, )
MUTUAL LIFE INSURANCE COMPANY )
OF NEW YORK, MONY LIFE INSURANCE )
COMPANY OF AMERICA, RAYMOND C. )
VESELIK and SCOTT VESELIK, )
 )
        Defendants. )

DOCKETED
MAR 0 2 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on certain Defendants' motion to dismiss Counts XI through XV of Plaintiff's Second Amended Complaint. For the reasons stated below, the Court grants the motion in part and denies the motion in part.

### BACKGROUND

For purposes of this motion to dismiss, the Court accepts Plaintiff's allegations as true. This case arises from the relationship between Plaintiffs Ann Rose, Michael Scott, Wendie Rose Scott, and Michael Rose ("Plaintiffs") and their insurance agent

Raymond Veselik. The Second Amended Complaint alleges that following the death of Ann Rose's husband in 1974, Ann Rose became increasingly dependent upon Veselik for assistance with her personal estate. The Plaintiffs allege that Veselik created a "Churning Scheme" to induce Plaintiff to purchase and maintain additional insurance policies, thereby creating income in the form of commissions, premiums, interest, and other fees and charges. A more complete summary of the background of Plaintiffs' claims against Veselik and the insurance companies can be found in the Court's earlier opinion. See Rose v. MONY Life Insurance Co., 2000 WL 1898474 (N.D. Ill. Dec. 21, 2000) (denying Veselik's motion to dismiss Plaintiff's Second Amended Complaint).

The allegations against Defendants Richard Bartelt and his law firm Wildman Harrold Allen & Dixon (collectively the "Attorney Defendants") begin around 1990. Around this time, Ann Rose asked Veselik about discrepancies between representations from Veselik and information she received from MONY. Veselik suggested she retain Bartelt to resolve any concerns the MONY policies. Bartelt agreed to represent Plaintiffs even though he had represented Veselik in connection with other claims brought against him by other MONY policyholders in cases similar to the allegations in the current matter. Bartelt did not advise Plaintiffs that other MONY policyholders had lodged identical complaints against Veselik, and Bartelt did not advise Plaintiffs

of his prior representation of Veselik in connection with those matters. Instead, Bartelt confirmed the substance and accuracy of Veselik's representations.

In 1990, Ann Rose questioned Veselik about the premiums of one particular policy. In response to Rose's concerns and allegedly to further the Churning Scheme, Bartelt drafted a letter agreement between Veselik and Rose to resolve any conflict between the terms of the policy and Veselik's representations. The Plaintiffs have alleged that Bartelt knew that the letter agreement was ineffectual and a nullity. In reliance on this letter, Rose maintained her policies with MONY.

In 1996, Plaintiffs asked the Attorney Defendants to investigate any claims the Plaintiffs might have against MONY and Veselik. The Attorney Defendants failed to disclose to Plaintiffs: 1) Veselik was no longer an agent of MONY and Bartelt had negotiated the terms of Veselik's resignation; 2) the Attorney Defendants were representing Veselik in a suit brought by MONY; 3) that Veselik's resignation from MONY was precipitated by Veselik's alleged fraudulent scheme.

As a result of the Churning Scheme and other alleged misconduct, Plaintiffs have suffered damages in the form of lost premiums, interest, cash values, death benefits, and other charges for lapsed or expired policies. Plaintiffs have had to make payments in excess of those represented by Veselik in order to prevent the insurance

policies from lapsing. Also, Plaintiffs have suffered tax penalties on withdrawals from their annuities.

Plaintiffs filed their Second Amended Complaint on October 5, 2000. The Complaint features five counts directed at the Attorney Defendants: Count XI alleges attorney malpractice by Bartelt and the law firm; Count XII alleges breach of fiduciary duty by Bartelt and the law firm; Count XIII alleges constructive fraud against Bartelt and the law firm; Count XIV alleges fraud against Bartelt and the law firm; and Count XV alleges a conspiracy to defraud by Bartelt and Veselik. The Attorney Defendants have moved to dismiss the counts against them.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to determine whether the plaintiff has stated a claim upon which relief can be granted. See Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir. 1995). The court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. See Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). Dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts to support allegations in the claim. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Strasburger v. Board of Educ., 143 F.3d 351, 359 (7th Cir. 1998). Nonetheless, in order to withstand a motion to dismiss, a complaint

must allege facts sufficiently setting forth the essential elements of a cause of action. See Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

## DISCUSSION

In their motion to dismiss, the Attorney Defendants challenge each one of the counts alleged against them in the Second Amended Complaint. This Court will deal with each count in turn. Both parties appear to agree that Illinois law applies to the claims against the Attorney Defendants.

1.  Count XI- Attorney Malpractice

To bring a claim for legal malpractice, a plaintiff must allege: (1) the existence of an attorney-client relationship; (2) a breach of that duty by the attorney; (3) proximate cause; and (4) damages. Owens v. McDermott, Will & Emery, 736 N.E.2d 145, 155 (Ill. App. 2000).

The Defendants contend that Plaintiffs cannot properly plead damages. The Defendants instead contend that Plaintiffs' claim for legal malpractice is premature. The "prematurity doctrine," as stated in Illinois case law, serves to dismiss legal malpractice cases where the damage from the attorney's alleged malpractice has not yet come to pass. The typical application of the prematurity doctrine is in a case involving the typical malpractice suit. Such a suit features representation by the attorney in litigation, the client's dissatisfaction with the results of the litigation, and

the client's allegations of malpractice during the litigation. See Alper v. Altheimer & Gray, 65 F. Supp. 2d 778, 784 (N.D. Ill. 1999). The prematurity doctrine forces would-be litigants to wait until there exists an adverse result in the underlying litigation before filing their claim. Only then can the putative plaintiff properly allege damages. See, e.g., Lucey v. Law Offices of Pretzel & Stouffer, Chartered, 703 N.E.2d 473, 480-81 (Ill. App. 1998).

The Defendants claim that the Plaintiffs' malpractice claim is premature, because Plaintiffs cannot allege that Defendants conduct has caused them to sustain actual damages. The Defendants take the position that the damages alleged in the Complaint cannot be allocated to the attorneys' malpractice as long as the Plaintiffs claims are still pending against MONY and Veselik.

This Court finds the recent case of Alper v. Altheimer & Gray instructive. In Alper, the court found that as long as (1) the underlying transaction is complete; and (2) the damages are not speculative, a legal malpractice action can proceed. Id. at 785. This test is applicable in the current matter, since this is not the "paradigmatic legal malpractice suit." See id. at 784. Here, the representation for which the Attorney Defendants were retained is completed. See id. Further, the damages alleged by Plaintiffs are not too speculative. "This is crucial, because [the Illinois courts that have found malpractice cases to be premature] ground their finding in a determination that

damages are too speculative." Id. at 785 (citations omitted). In this case, the Plaintiffs allege they have suffered damages in the form of lost premiums, interest, cash value, death benefits, and other various charges. Based on their Complaint, the Plaintiffs can demonstrate that they were injured by the Attorney Defendants' advice. Cf. Farm Credit Bank v. Gamble, 554 N.E.2d 779, 781 (Ill. App. 1990) (dismissing legal malpractice claim because the plaintiff "at this point cannot demonstrate that he was injured by [the attorney's] advice"). "Actions in legal malpractice are based on damages incurred." Id. According to their Complaint, the Plaintiffs have incurred damages as a result of the malpractice, and the Court must take Plaintiffs's allegations as true at this stage of the litigation.

The Defendants' motion to dismiss Count XI (Attorney Malpractice) is denied.

2.   Count XII- Breach of Fiduciary Duty

To bring a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty owed by defendant to the plaintiff; (2) defendant's breach of that duty; and (3) that plaintiff suffered actual damages as a result of that breach. Arena Football League v. Roemer, 9 F. Supp. 2d 889, 896-97 (N.D. Ill. 1998). Defendants contend that Plaintiffs breach of fiduciary duty claim is essentially the same as their legal malpractice claim.

A fiduciary duty exists as a matter of law between an attorney and his client, but every alleged malpractice by an attorney does not rise to the level of a breach of fiduciary duty. Calhoun v. Rane, 599 N.E.2d 1318, 1321 (Ill. App. 1992). When a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, Illinois courts will dismiss the later claim as duplicative. See Majumdar v. Lurie, 653 N.E.2d 915, 921 (Ill. App. 1995). Here, the Court must determine if any *operative* facts exist that distinguish the Plaintiffs' legal malpractice claim from their breach of fiduciary duty claim. Plaintiffs have essentially alleged that Defendants had a conflict of interest in their representation of Plaintiff at the same time they were representing Veselik. This Court fails to see any meaningful difference in the allegations contained in Count XI (Attorney Malpractice) and Count XII (Breach of Fiduciary Duty).

This Court still believes that it is possible, under Illinois law, to properly plead a cause of action for malpractice and a separate action for breach of fiduciary duty. See Pavilion Hotel Corp. v. Koch, 2000 WL 51817 (N.D. Ill. Jan. 14, 2000). The Plaintiffs have simply failed to do so in this case.

The Defendants' motion to dismiss Count XII (Breach of Fiduciary Duty) is granted.

3.  Count XIII- Constructive Fraud

Constructive fraud is an act of omission that requires "neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others." Index Futures Group, Inc. v. Ross, 557 N.E.2d 344, 349 (Ill. App. 1990).

Illinois courts have held that a necessary element of a claim of constructive fraud is the finding of a breach of fiduciary duty. See, e.g., Paskas v. Illini Federal Savings & Loan Assoc., 440 N.E.2d 194, 198 (Ill. App. 1982) ("constructive fraud will be found in a breach of a duty arising out of a fiduciary or confidential relationship"). Here, the Plaintiffs have not properly alleged a breach of fiduciary duty, and as such, the claim for constructive fraud cannot stand. See Kohler v. Leslie Hindman, Inc., 1994 WL 233801 (N.D. Ill. May 20, 1994). Both sides seem to agree that a party's claim for constructive fraud cannot stand when that party's claim for breach of fiduciary duty is dismissed. See Pl.'s Response to Def.'s Motion to Dismiss at 13 (noting that "the converse of [Defendants' argument] is equally true: where a plaintiff adequately pleads a cause of action for breach of fiduciary duty, a claim for constructive fraud is also properly stated").

The Defendants' motion to dismiss Count XIII (Constructive Fraud) is granted.

4.  Count XIV- Fraud

To state a claim for fraud, a plaintiff must allege: (1) that defendant made a statement (or omission); (2) that the statement was material; (3) that the statement was untrue; (4) that the defendant knew the statement was untrue or was in culpable ignorance of the statement's veracity; (5) that defendant had the intent that plaintiff rely on the statement; (6) that plaintiff actually relied on the statement; and (7) the reliance resulted in damages to the plaintiff. Small v. Sussman, 713 N.E.2d 1216, 1221 (Ill. App. 1999). In addition to these elements, a plaintiff pleading fraud in federal court must satisfy the particularity requirements of Federal Rule of Civil Procedure Rule 9(b).

The Defendants claim that Plaintiffs have not pleaded fraud with sufficient particularity. The Seventh Circuit has held that a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994) (citations omitted). Further, a complaint for fraud cannot stand on "rote conclusions." See Robin v. Arthur Young & Co., 915 F.2d 1120, 1127 (7th Cir. 1990) cert. denied, 499 U.S. 923 (1991). Here, the plaintiffs have set forth a number of specific allegations with adequate detail. The Plaintiffs recount specific instances

where Bartelt is alleged to have intentionally misled the Plaintiffs while in a position of power. The purpose of the particularity requirement is to force the plaintiff to make a thorough investigation of a claim of fraud before filing a complaint. See Ackerman v. Northwestern Mutual Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999).

The Defendants further claim that the Plaintiffs' Complaint does not adequately plead scienter. Although the Federal Rules of Civil Procedure require that fraud be pled with particularity, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The complaint must provide facts from which it can be inferred that the defendants possessed the requisite mental state. Bell & Howell Financial Services Co. v. St. Louis Pre-Sort, Inc., 1999 WL 965961 (N.D. Ill. Sept. 29, 1999) citing DiLeo v. Ernst & Young, 901 F.2d 624 at 627, 629 (7th Cir. 1990). The Court believes that this Complaint does provide a basis to believe Plaintiffs could prove scienter. The Complaint alleges that Bartelt and his law firm deliberately did not inform Plaintiffs of their representation of Veselik. The Complaint also alleges that the Attorney Defendants knew that the Letter Agreement was worthless, and yet they presented it to Ann Rose and represented that it was going to resolve discrepancies between Veselik and MONY's representations.

The Defendants' motion to dismiss Count XIV (Fraud) is denied.

5.  Count XV- Conspiracy to Defraud

To properly allege a civil conspiracy, a plaintiff must plead: (1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action; (3) either an unlawful purpose or a lawful purpose by unlawful means. Adcock v. Brakegate, Ltd., 645 N.E.2d 888, 894 (Ill. 1994). In addition, this Court has required that conspiracy must be pled with particularity under Federal Rule of Civil Procedure 9(b). See Cohabco Cigar Co. v. United States Tobacco Co., 1998 WL 773696 *6-7 (N.D. Ill. Oct. 30, 1998).

An allegation of civil conspiracy must state facts, not mere conclusions. "[S]imply mouthing conclusory assertions of 'conspiracy' in the context of an asserted fraud will not suffice." Eisenhauer v. Stern, 2000 WL 136011, *2 (N.D. Ill. Jan. 27, 2000). A plaintiff must allege specific facts showing the existence of an agreement between the alleged conspirators. Herion v. Village of Bensonville, 2000 WL 1648937 (N.D. Ill. Nov. 1, 2000). Here, the Complaint's conspiracy count is simply a reiteration of the previous counts with an added assertion of conspiracy. No facts are alleged to show the existence of an agreement to defraud between Veselik and Bartelt. Such conclusory allegations will not support a claim for civil conspiracy.

The Defendants' motion to dismiss Count XV (Conspiracy to Defraud) is granted.

6. Supplemental Jurisdiction

Defendants also request that this Court decline to exercise supplemental jurisdiction over these cases. See 28 U.S.C. Sect. 1367(a). State claims can be brought in the same action as federal claims when the claims at issue derive from the same operative facts, and courts generally require only a "loose factual connection between the claims." Herman v. Wolfe, 1998 WL 30706 *3 (N.D. Ill. January 26, 1998) citing Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995). A factual connection certainly exists here. The Plaintiffs allege the Attorney Defendants to be intimately involved with the Churning Scheme used to defraud in this case.

## CONCLUSION

Defendants' motion to dismiss is granted with respect to Count XII (Breach of Fiduciary Duty), Count XIII (Constructive Fraud), and Count XV (Conspiracy to Defraud). Those claims are hereby dismissed from the Second Amended Complaint. Defendants' motion to dismiss is denied with respect to Count XI (Attorney Malpractice) and Count XIV (Fraud).

Charles P. Kocoras
United States District Judge

Dated: FEB 28 2001